CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 13 2010

JULIA G. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RAEBURN S. GRASTY, ) | |
|     Plaintiff, ) | Civil Action No.: 7:09cv00471 |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| THE CITY OF ROANOKE, et al., ) | By: Samuel G. Wilson |
|     Defendants. ) | United States District Judge |

This is an action by plaintiff, Raeburn Grasty, against defendants, the City of Roanoke, its Chief of Police, Joseph Gaskins, and two of its police officers, Isaac T. Anderson and Christopher M. Hamilton, arising out of his arrest and prosecution for obstruction of justice. Grasty asserts false arrest, malicious prosecution, unlawful search, and other claims under 42 U.S.C. § 1983 and similar claims under Virginia law. The court grants summary judgment on all claims except for the false arrest and malicious prosecution claims against Anderson, and the unlawful search claims against Hamilton.

I.

In the light most favorable to Grasty, the facts are as follows. Grasty was a taxicab driver for Yellow Cab Services of Roanoke, Virginia, Inc. ("Yellow Cab"). Late in the evening on January 4, 2008, Grasty was dispatched to the Wal-Mart store near Valley View Mall in Roanoke, Virginia, where he picked up a customer, Barbara Carter.[1] Carter was agitated and cursed at Grasty. Grasty informed her that he would not transport her unless she stopped cursing, so Carter stopped cursing at Grasty, and Grasty drove her home. She then paid her fare, exited his cab, entered her residence, and closed the door. Not realizing that Carter had left her purse in

---

[1] Grasty named Carter as a defendant, but she failed to respond, and the Clerk of Court has entered her default.

the back seat, Grasty left and proceeded to pick up his next scheduled fare.

While en route, Grasty received a call from the Yellow Cab dispatcher, who asked Grasty if he saw a purse in his taxicab. Grasty looked in his rearview mirror, saw the purse, and so informed the dispatcher. The dispatcher asked Grasty either to return it to Carter or bring it to Yellow Cab's main office. Grasty responded that he would take the purse to the office after he transported his next customer. Grasty immediately stopped his vehicle and placed the purse in the trunk of his taxicab for safekeeping. Grasty then picked up his next customer, and after dropping that customer off, drove directly to Yellow Cab's main office where he left the unopened purse in the custody of Yellow Cab's office personnel.

While Grasty was at the Yellow Cab office, one of Yellow Cab's office personnel placed Grasty on the telephone with Officer Anderson, and Grasty informed Anderson that he had dropped off the purse for safekeeping. Anderson replied that he was considering arresting Grasty for grand larceny, and Grasty responded that if he did he would sue Anderson for false arrest. Grasty hung up the phone and left Yellow Cab's office to pick up his next customer. While Grasty was en route, the Yellow Cab dispatcher called him and asked him to return to the office because Anderson and Hamilton were there waiting to speak with him.

Before Grasty arrived back at the office, Anderson and Hamilton had verified that Grasty had returned Carter's purse to the office, and they had obtained Grasty's identifying information, including his name and date of birth. When Grasty arrived at the Yellow Cab parking lot at 12:30 a.m., Anderson and Hamilton were waiting next to their patrol car. Because of Anderson's earlier threat to arrest Grasty, Grasty surreptitiously recorded the encounter. According to Anderson, Carter had complained that Grasty drove off while she was in the process of retrieving

her personal belongings. Grasty denied Carter's account and insisted that he had acted appropriately. Anderson asked him his name, and Grasty responded: Ray Grasty. He then spelled his name at Anderson's request. Anderson then asked Grasty for his date of birth. Grasty stated that he would not give his date of birth but that it was on file in the office. Anderson warned Grasty that Grasty was "getting ready to step into ... obstruction of justice." Grasty responded: "arrest me, arrest me, arrest me," and Anderson arrested him for obstruction of justice. Hamilton then searched his cab. Anderson transported Grasty to the local magistrate, who issued a warrant for obstruction of justice in violation of Va. Code § 18.2-460. Eventually, Grasty was tried on the obstruction charge in the General District Court of the City of Roanoke and acquitted.

## II.

Grasty claims that Anderson lacked probable cause to arrest him for obstruction of justice, and he raises false arrest and malicious prosecution claims against Anderson under 42 U.S.C. § 1983. Anderson has moved for summary judgment, contending that he had probable cause to arrest Grasty for violating Va. Code § 18.2-460 because he "was convinced that Mr. Grasty intended to prevent him from performing his duties as a police officer . . . ." (Def's Mem. at p. 13.) Alternatively, Anderson contends that he has qualified immunity because he did not violate a clearly established constitutional right of which a reasonable officer would have known. The court finds that, in the light most favorable to Grasty, Anderson did not have probable cause to arrest Grasty for obstruction of justice and that Anderson does not have qualified immunity because it would be clear to a reasonable officer that he could not arrest Grasty for violating § 18.2-460 for not supplying information that Anderson already possessed.

3

False arrest and malicious prosecution claims are simply claims founded on a Fourth Amendment seizure that incorporate elements of those analogous common-law torts. See Lambert v. Williams, 223 F.3d 257 (4th Cir. 2000).[2] To be actionable under § 1983, there must be a seizure for purposes of the Fourth Amendment. Here, Grasty claims that his warrantless arrest for obstruction of justice was an unreasonable seizure under the Fourth Amendment because Anderson lacked probable cause. "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed . . . ." Devenpeck v. Alford, 543 U.S. 146, 152 (2004). While "[t]he probable cause standard is incapable of precise definition or quantification," Maryland v. Pringle, 540 U.S. 366, 371 (2003), generally, probable cause exists if, "at the moment the arrest was made . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense," Beck v. Ohio, 379 U.S. 89, 91 (1964) (citations omitted). The existence of probable cause in a particular situation "always turns on

---

[2] The elements of malicious prosecution under § 1983 are "(1) the initiation or maintenance of a proceeding against the plaintiff by the defendant; (2) termination of that proceeding favorable to the plaintiff; [and] (3) lack of probable cause to support that proceeding . . . ." While malice is an element of the claim under common law, it is not an element of the claim under § 1983 "since the reasonableness of a seizure under Fourth Amendment jurisprudence should be analyzed from an objective perspective." Lambert, 223 F.3d at 260, 262 n. 2 (citations omitted). The elements of a claim of false arrest under § 1983 are substantially the same as the elements of a false arrest claim under state law. See Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995). Therefore, to sustain a claim of false arrest under § 1983, the plaintiff must prove that his freedom of movement was intentionally restricted *without legal justification*, and that the intentional use of force, words, or acts lead him to believe he must submit. See Montgomery Ward & Co. v. Wickline, 50 S.E.2d 387, 388-89 (Va. 1948). Consequently, to state a claim of false arrest under § 1983, the arresting officer must have lacked probable cause. See Street v. Surdyka, 492 F.2d 368, 372-73 (4th Cir. 1974).

two factors in combination: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir. 1992).

Va. Code § 18.2-460 provides that "any person [who] without just cause knowingly obstructs . . . any law enforcement officer . . . in the performance of his duties as such or fails or refuses without just cause to cease such obstruction when requested to do so . . . shall be guilty" of obstruction of justice. "[A]s the plain language of the statute states, obstruction of justice does not occur when a person fails to cooperate fully with an officer or when the person's conduct merely renders the officer's task more difficult but does not impede or prevent the officer from performing that task." Ruckman v. Commonwealth, 505 S.E.2d 388, 389 (Va. Ct. App. 1998). Here, in the light most favorable to Grasty, the only information Anderson requested that Grasty refused to give was his birth date and, as Anderson admits, Anderson had already obtained that information from the Yellow Cab office before Grasty returned to the Yellow Cab premises to speak with him. Grasty in no way impeded or prevented Anderson from performing any task.[3]

---

[3] Anderson filed an affidavit stating:
> Based upon Mr. Grasty's direct attempt to actively and persistently interfere with my ability to perform my duty of completing and filing an incident report with the police department as required by departmental policy, I believed that I had probable cause to arrest Mr. Grasty for obstruction of justice.

But the court has listened to the electronic recording of this incident and reviewed the purported transcript Grasty submitted, and the court fails to discern any conduct that appears to be a "direct attempt to actively and persistently interfere" with Anderson's investigation.

Anderson's affidavit also seems to imply that Grasty refused to give information required by Roanoke City Code § 23-2, which provides:
> It shall be unlawful for any person, in any public place or place open to the public, to refuse to accurately identify himself by name and address at the request of a uniformed police officer or of a properly identified police officer not in uniform, if the surrounding circumstances are such as to

Based upon the evidence currently before this court, therefore, probable cause was lacking to arrest Grasty for obstructing justice in violation of Va. Code § 18.2-460.

Anderson contends that even if he lacked probable cause to arrest Grasty for obstruction of justice, he is shielded from liability by qualified immunity. "Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Campbell v. Galloway, 483 F.3d 258, 270 (4th Cir. 2007) (citations omitted). To overcome a qualified immunity defense, a plaintiff in a § 1983 case must show that the defendant's action deprived the plaintiff of a protected constitutional right, and that the right was so clearly established at the time of the transgression that a reasonable person would have been aware of it. See Pearson v. Callahan, 129 S.Ct. 808, 815-16 (2009); see also Campbell, 483 F.3d at 271. "[I]ts contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . ; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (citations and quotations omitted). This is akin to requiring that an officer have "fair warning" that he is violating a constitutional right. United States v. Lanier, 520 U.S. 259 (1997). "But general statements of the law are not inherently incapable of giving fair and clear warning, and in

---

        indicate to a reasonable person that the public safety requires such identification.
Again, the electronic recording of the incident discloses that Grasty answered every question he was asked except when asked for his date of birth, which, of course, the ordinance does not require.

other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." Hope, 536 U.S. at 741 (citing Lanier, 520 U.S. at 271 (citations omitted)). Therefore, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Id.

Here, as previously noted, in the light most favorable to Grasty, Anderson knew precisely with whom he was dealing. He knew Grasty's name and birth date, the only bit of information Grasty failed to supply directly when asked. Under the circumstances, it was more than a stretch for Anderson to assert that Grasty was obstructing justice. Anderson had fair warning that he could not arrest Grasty for failing to give information Anderson already had.

Anderson argues that he is entitled to qualified immunity because he "believed that Mr. Grasty's refusal to fully identify himself constituted an active and persistent interference with his ability to investigate a criminal complaint of larceny and to complete a criminal incident report as required by departmental policy and state law." (Def's Mem. at p. 14.) His argument, at best, contains an extravagant use of adjectives and adverbs for Grasty's single refusal to tell Anderson his birth date, information Anderson already had, and for that, Grasty was arrested, taken before a magistrate and jailed for obstruction of justice. In making this argument, Anderson attempts to liken the circumstances of his case to those in Burrell v. Commonwealth, 395 F.3d 508 (4th Cir. 2005), in which the Court of Appeals found that an officer had probable cause to issue a summons to a motorist for obstruction of justice arising out of the motorist's refusal to produce evidence of insurance as required by Virginia law. However, the difference between an officer charging and summoning a motorist for refusing to give him information that the officer does not

have (information that the motorist is insured as required by Virginia law) and an officer arresting an individual for not repeating information the officer already has should be readily apparent. Consequently, Anderson does not have qualified immunity.

Grasty also asserts state law claims against Anderson for false arrest and malicious prosecution. The elements of those claims essentially parallel Grasty's § 1983 false arrest and malicious prosecution claims.[4] Anderson contends that he has sovereign immunity and consequently cannot be liable under state law on those claims. The court agrees that he has sovereign immunity, but an individual who has sovereign immunity under state law is not immunized from suit. Rather, if he is sued for his own conduct, the degree of negligence necessary to impose liability upon him is elevated from simple negligence to gross negligence. See Couplin v. Payne, 613 S.E.2d 592, 595 (2005). Whether Anderson was grossly negligent or engaged in intentional misconduct remains a question for the trier of fact.

### III.

Grasty claims that Hamilton's search of his taxicab violated Grasty's rights under the Fourth Amendment. Hamilton contends that the search was permitted because it was incident to Grasty's lawful arrest.[5] Alternatively, Hamilton contends that he has qualified immunity because he did not violate a clearly established constitutional right of which a reasonable officer would

---

[4] See *supra* note 3, at 4; see also Reilly v. Shepherd, 643 S.E.2d 216, 218 (Va. 2007) (reciting the common law elements of malicious prosecution); Montgomery, 50 S.E.2d at 388-89 (stating the common law elements of false arrest/false imprisonment).

[5] The search-incident-to-arrest exception to the Fourth Amendment's warrant requirement, as defined in Chimel v. California, 395 U.S. 752 (1969), and applied to vehicle searches in New York v. Belton, 453 U.S. 454 (1981), was refined in Arizona v. Gant, 129 S.Ct. 1710 (2009). But at all times, the rule has consistently required a lawful arrest.

have known. However, the court has already concluded that, in the light most favorable to Grasty, Anderson did not have probable cause to arrest Grasty for obstruction of justice and that Anderson does not have qualified immunity. Given those findings and Hamilton's acknowledged understanding of the facts when he searched Grasty's taxicab, Hamilton does not have qualified immunity, and the court denies his motion for summary judgment as to this claim.

Grasty also asserts a claim against Hamilton under Va. Code § 19.2-59, which creates a right of action for warrantless, unlawful searches. "[S]ection 19.2-59 provides the same protection as the Fourth Amendment." Burnham v. West, 681 F. Supp. 1169, 1170 (E.D. Va. 1988). Grasty's claim under this section, therefore, parallels his Fourth Amendment claim against Hamilton under § 1983, and is subject to the defense of sovereign immunity. Id. at 1172. As the court noted earlier, an individual who has sovereign immunity under state law is not immunized from suit. Rather, if he is sued for his own conduct, the degree of negligence necessary to impose liability upon him is elevated from simple negligence to gross negligence. Whether Hamilton was grossly negligent or engaged in intentional misconduct remains a question for the trier of fact. Accordingly, the court denies his motion for summary judgment as to this claim.

### IV.

Grasty has raised a host of claims under 42 U.S.C. § 1983 against the City of Roanoke and Gaskins. The City and Gaskins have moved for summary judgment on the ground that they cannot be held liable under *respondeat superior* and because Grasty cannot produce evidence to support either municipal liability or supervisory liability. The court agrees.

Under § 1983, municipalities are not liable under the theory of *respondeat superior* for

unconstitutional conduct engaged in by their employees. See Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 691 (1978). To hold a municipality liable under § 1983, a plaintiff must prove that "action pursuant to official municipal policy [or custom] of some nature caused [the] constitutional tort," id., and only when that policy[6] or custom[7] is "the moving force of the constitutional violation" is the government entity liable, id. at 694.

Here, Grasty cannot sustain a § 1983 claim against the City because he has not marshaled evidence that supports his claim that the City knowingly implemented a policy or custom that violated his rights. Grasty merely claims that "there *may* have been past significant violations of citizens' constitutional and/or statutory rights by Roanoke City police officers." (SJ Response Brief, 26) (emphasis added). As examples, he offers the case of Rogers v. Pendleton, 249 F.3d 279 (4th Cir. 2001) (holding that Virginia's obstruction of justice statute clearly failed to encompass homeowner's behavior in verbally objecting to officers' proposed plainly unlawful search) and the arrest of another individual for obstructing a sidewalk and for not identifying herself. (SJ Response Brief, 27-28.) Based on these incidents and the fact that different officers were involved in each arrest, Grasty has concluded that a "pattern and practice" exists in Roanoke City of officers arresting citizens for obstruction of justice for failure to identify themselves when there is no probable cause to support an arrest. This evidence falls far short,

---

[6] A policy is "a course of action consciously chosen from among various alternatives respecting basic governmental functions, as opposed to episodic exercises of discretion in the operational details of government." Spell v. McDaniel, 824 F.2d 1380, 1386 (4th Cir. 1987) (internal quotation marks omitted).

[7] A custom exists when the "persistent and widespread" practices of government officials are "so permanent and well-settled as to [have]the force of law." Spell, 824 F.2d at 1386 (internal quotation marks omitted) (insertion in original).

however, of demonstrating a widespread "pattern and practice" that is "so permanent and well-settled as to [have] the force of law."[8] Spell, 824 F.2d at 1386. Accordingly, the City is entitled to summary judgment on Grasty's § 1983 claims.[9]

Grasty also has sued Gaskins in his individual capacity. To hold Gaskins liable under § 1983 in his individual capacity, Grasty must prove that

> (1) [Gaskins] had actual or constructive knowledge that [Anderson and Hamilton were] engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like [Grasty]; (2) that [Gaskins'] response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between [Gaskins'] inaction and the particular constitutional injury suffered by [Grasty].

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted). Grasty, at best, has speculated that Gaskins *may* have been aware of past constitutional violations by his officers. (SJ Response Brief, 26.) ("[T]here may have been past . . . violations . . . of which Chief Gaskins had been made aware."). But he has not shown that Gaskins had actual or constructive knowledge that Anderson and Hamilton were engaged in conduct that posed a

---

[8] Grasty also argues that the City (with deliberate indifference) has failed to train its officers. However, the affidavits of Officers Anderson and Hamilton as well as the affidavit of Deputy Chief Tim Jones – all of whom have attested to the training offered by the Roanoke City Police Department and the fact that both Anderson and Hamilton have received and continue receiving training on arrest tactics and various constitutional rights, including the Fourth Amendment – suggest that the city has not been deliberately indifferent with regard to training its officers. See City of Canton v. Harris, 489 U.S. 378, 380 (1989). Grasty has offered no evidence to dispute these affidavits, and his bald allegations, without more, do not raise an issue for trial.

[9] Grasty has sued Gaskins in his official capacity. A suit against a public officer in his official capacity is really a suit against the public officer's governmental employer, and therefore, the same standard as that applied to government entities applies in an official capacity suit. See Hafer v. Melo, 502 U.S. 21, 25 (1991). Because Grasty has not demonstrated that the City implemented a policy or custom that violated his rights, he cannot sustain a § 1983 claim against Gaskins in his official capacity.

pervasive and unreasonable risk of constitutional injury to citizens like himself. Gaskins, therefore, is entitled to summary judgment on Grasty's § 1983 claims.

Grasty has also raised a host of claims under Virginia law against the City and Gaskins. The City and Gaskins have moved for summary judgment on the ground that they are not subject to liability for the alleged torts of Anderson and Hamilton. The court agrees.

Under Virginia law, a municipality is generally immune from negligent and intentional "tort liability arising from the exercise of governmental functions." Niese v. City of Alexandria, 564 S.E.2d 127, 132 (Va. 2002) (referencing Hoggard v. City of Richmond, 200 S.E. 610, 611 (Va. 1939)); see also Carter v. Morris, 164 F.3d 215 (4th Cir. 1999) (holding that under Virginia law a municipality is immune from liability for intentional torts committed by an employee during the performance of a governmental function). A police officer effecting an arrest is carrying out a governmental function, and therefore, his municipal employer is not liable for his tortious actions. See Niese, 564 S.E.2d at 132; Carter, 164 F.3d at 221; Synder v. City of Alexandria, 870 F. Supp. 672, 691 (E.D. Va. 1994).

A commanding officer of a police department is not vicariously liable for the tortious acts of his subordinates unless he participated in or authorized those acts, see Carter, 164 F.3d at 221 (noting that the plaintiff's state law tort claims against the chief of police, which were based on the acts of his subordinates, should be dismissed because there was no evidence that the chief "actually participated in or authorized" the offensive conduct).

Here, the City was exercising a governmental function in maintaining a police force, and it is entitled to sovereign immunity as to all of Grasty's state law claims. Because Grasty has not presented evidence that Gaskins participated in or authorized the alleged tortious acts of

Anderson and Hamilton, Gaskins cannot be held vicariously liable for their alleged torts. Accordingly, the court grants the City and Gaskins summary judgment on all of Grasty's state law claims.

V.

For the reasons stated, the court grants summary judgment on all claims except for the false arrest and malicious prosecution claims against Anderson, and the unlawful search claims against Hamilton.[10]

**ENTER:** This 13th day of August 2010.

_____
UNITED STATES DISTRICT JUDGE

---

[10] Grasty asserts numerous other federal and state claims against both Anderson and Hamilton. The court has concluded that all of those other claims are either frivolous or subsumed by Grasty's federal and state law false arrest, malicious prosecution, and unlawful search claims.